**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| ANDREW COLVILLE and KAREN COLVILLE, | ] |
| | ] |
| **Plaintiffs,** | ] |
| | ] |
| v. | ] |
| | ] |
| SHERIFF JOE JACKS, et al., | ] |
| | ] |
| **Defendants.** | ] |
| | ] |

**CV-05-BE-1979**

## MEMORANDUM OPINION

This case is before the court on Defendants'[1] Motion to Dismiss Plaintiffs' Amended

Complaint (Doc. 32).  For the reasons outlined below, the court finds that the motion is due to be

GRANTED in part and DENIED in part.  Specifically, the court GRANTS Defendants' motion

with respect to Plaintiffs' First, Third, Fourth, Eighth, and Ninth Causes of Action, as well as all

claims against Defendant Tim Gossage.  Defendants' motion is also GRANTED in part as to

Plaintiffs' Tenth Cause of Action as to these Defendants, which shall proceed only as to the

medical Defendants – Louis Luciano DiValentin, Pam Caldwell, and the Anniston Medical

Clinic.  Defendants' motion is hereby DENIED as to the Second Cause of Action, against

Defendant Funderburk for excessive force. A separate order will be entered contemporaneously

with this memorandum opinion.

## I.    FACTUAL BACKGROUND

On or about December 4, 2004, Plaintiff Andrew Colville became involved in an

altercation with his roommate, Noah Jessie Brown, in the Cleburne County jail.  Defendants

---

[1] Defendants Jacks, Funderburk, Taylor, Gossage, and Parker have filed this motion to dismiss.

Funderburk and Taylor, who worked at the jail, arrived at his unit to respond to the altercation. Plaintiffs' amended complaint alleges that upon the officers' arrival, Mr. Colville and his roommate had been separated, but that they subsequently began fighting again until they were separated by other inmates.  Funderburk *then* employed a Taser against Mr. Colville.  As a result of the Taser charge, Mr. Colville struck his head on a stone wall and sustained an injury at the base of his skull.

Defendants Funderburk and Taylor then dragged Mr. Colville away to a detox room where he was held until December 7, 2004.  As they took him away, Mr. Colville held his head and complained that he could not see and that he was dizzy.  Mr. Colville alleges that, for the next several days, he continued to complain about his injuries and that he was mentally and physically impaired as a result of the head injury.  He asserts that the jailer Defendants did nothing to assist him or secure necessary treatment for him, even though they knew or had been told that he was severely injured.

Mr. Colville further claims that some health care professionals, employed by the Anniston Medical Clinic, came to see him on December 4, 2004, but he alleges that their reports from that visit did not indicate attention to his head injury.  Plaintiffs note that Mr. Colville's medical records reflect that health care professionals visited him again on December 5, 7, and 8.[2] Plaintiffs contend that any observer would have noted Mr. Colville's head injury and his general disorientation resulting from that injury.  Additionally, throughout the six days following the altercation, Mr. Colville was "in a stupor such that he does not have a clear recollection of what happened."

---

[2]  Plaintiffs appear to believe that the medical records were deliberately falsified, but they do not specifically assert that the records were falsified in terms of the number of visits the doctors made.

On December 10, 2004, Mr. Colville was transferred to the Kilby Correctional Facility. When he arrived there, the guard at the back gate noted his condition and called in a nurse to attend to him.  He was next transferred by stretcher to the Kilby hospital, and then to Baptist Medical Center South in Montgomery, where doctors performed emergency surgery for a subdural hematoma and fractured skull.  When he arrived at the hospital, Mr. Colville was in a coma and his body was covered in cuts and bruises.

Subsequently, the Alabama Bureau of Investigation ("ABI") launched an investigation into the incident because of the severity of Mr. Colville's injuries when he arrived at the Kilby Correctional Facility.  Plaintiffs' amended complaint incorporates many of the factual findings of the ABI.

## II.    PLAINTIFFS' CAUSES OF ACTION

Plaintiffs, Mr. and Mrs. Colville, have sued Sheriff Joe Jacks and several jailers at the Cleburne County Jail in their individual capacities (Marty Funderburk, Jackie Taylor, Allan Fordham[3], Tim Gossage, "CO Lynn," "CO Trish," and Jeff Parker) as well as the Anniston Medical Clinic and two of its employees (Louis Luciano DiValentin and Pam Caldwell).  The amended complaint contains the following causes of action:

(1)     § 1983 claim for excessive force as a custom, policy, or practice against Sheriff Jacks;

(2)     § 1983 claim for excessive force against Officer Funderburk;

(3)     Assault and battery under Alabama law against Officer Funderburk;

(4)     Wantonness under Alabama law against Officers Funderburk, Parker, Taylor,

---

[3] Defendant Fordham has been dismissed from this action, pursuant to a separate order issued on the same date as this memorandum opinion and order.

Fabian[4], and Trish;

(5)     § 1983 claim for deliberate indifference against Officers Funderburk, Taylor, Gossage, Trish, and Parker;

(6)     Alabama Medical Liability Act claim against Dr. DiValentin, Pam Caldwell, and the AMC;

(7)     § 1983 claim for deliberate indifference against Dr. DiValentin, Pam Caldwell, and the AMC;

(8)     § 1983 claim for failure to institute adequate, appropriate and proper training and failure to have appropriate safeguards in hiring policies against Sheriff Jacks;

(9)     § 1983 civil rights conspiracy against "defendants";

(10)    Mrs. Colville's Loss of Consortium claim (no defendants specifically identified).

Only Defendants Jacks, Funderburk, Taylor, Gossage, and Parker have filed the instant motion. Therefore, the court does not need to address whether counts 6 and 7 are due to be dismissed.

## III.    STANDARD OF REVIEW

"The threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is . . . exceedingly low." *Ancata v. Prison Health Serv's., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985) (internal quotations omitted). In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, the court must construe all factual allegations as true and resolve them in the light most favorable to the plaintiff. *Beck v. Deloitte*

---

[4] Officer Brenda Fabian is named in the fourth cause of action (for wantonness), and in the paragraph of the complaint listing all the defendants. Officer Fabian, however, has not been named as a party to this complaint, and has not been served with the complaint. Accordingly, Plaintiff has not properly made, and this court will not consider, any claims against Brenda Fabian.

4

*& Touche*, 144 F.3d 732, 735 (11th Cir. 1998).  The court may grant the motion only if the court

clearly and beyond doubt cannot award the plaintiff relief under any set of facts that could be

proved consistent with the allegations of the complaint.  *See Id*. at 735.  "In seeking dismissal for

failure to state a viable claim, a defendant thus bears the very high burden of showing that the

plaintiff cannot conceivably prove any set of facts that would entitle him to relief."  *Id*. at 735-36.

As discussed below, however, that "exceedingly low" standard increases where a plaintiff asserts

a claim under 42 U.S.C. § 1983.


IV.    **DISCUSSION**

    A.    **Heightened Pleading Standard for § 1983 Claims**

        *1.    Generally*

Defendants argue that the Plaintiffs' individual capacity claims against them are due to be

dismissed because the amended complaint as a whole fails to meet the heightened pleading

requirements in the Eleventh Circuit for § 1983 qualified immunity claims.  The Court of

Appeals has held:

> [W]hile Fed. R. Civ. P. 8 allows a plaintiff considerable leeway in
> framing its complaint, this circuit, along with others, has tightened
> the application of Rule 8 with respect to § 1983 claims, requiring
> that a § 1983 plaintiff allege with some specificity the facts which
> make out its claim. . . .  Some factual detail is necessary to the
> adjudication of § 1983 claims.  This is particularly true in cases
> involving qualified immunity, where we must determine whether a
> Defendant's actions violated a clearly established right.

*GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1367 (11th Cir. 1998).

Defendants argue that Plaintiffs' amended complaint pursues "multiple claims against

every conceivable Defendant . . . .  The result of Plaintiffs' 'either-or' approach to pleading their amended complaint is a [sic] Defendants are forced to speculate as to the claims against which they must defend themselves."  As noted above, however, Plaintiffs' complaint specifically references the Defendants against whom Plaintiffs assert each count.  Although, as discussed below, some individual counts should be dismissed on the basis of failure to comply with the heightened pleading requirements, the complaint as a whole includes enough factual specificity to understand what constitutional rights the Plaintiffs allege the Defendants have violated.

### 2.    *Defendant Tim Gossage*

Defendants make the specific argument that Defendant Gossage should be dismissed from this action because Plaintiffs have failed to make factual allegations about Mr. Gossage's conduct sufficient to sustain a cause of action against him under § 1983.  Indeed, the only references to Defendant Gossage are contained in the caption and in the Fifth Cause of Action, in which Plaintiffs make the conclusory allegation that Gossage displayed deliberate indifference to Mr. Colville's serious medical need.  Plaintiffs have not included any factual allegations supporting the claim against Gossage.  Accordingly, with respect to him, they have not satisfied the heightened pleading requirements for § 1983 claims.  Therefore, Defendant Gossage is due to be DISMISSED.

### B.    Qualified Immunity

### 1.    *Standard of Review*

Qualified immunity protects government officials performing discretionary functions from suit in their individual capacities unless the official violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Hope v. Pelzer*, 536 U.S.

730, 739 (2002).  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, . . . protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law. . . ."  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal citation and quotations omitted).  This court recognizes that "[b]ecause qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible."  *Id*.; citing *GJR Invs., Inc., v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998).  Therefore, a district court should "grant the defense of qualified immunity at the motion to dismiss stage if the complaint fails to allege the violation of a clearly established constitutional right."  *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003).

To receive qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."  *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).  Once a defendant shows that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate.  *Id*.  The Supreme Court articulated a two part test to determine whether qualified immunity is appropriate.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The court first asks "'this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? . . .  [I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.'"  *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) quoting *Saucier*, 533 U.S. at 201).

7

In this case, the Plaintiffs do not dispute that the Defendants were acting within the scope of their discretionary authority.  The court, therefore, will analyze whether the complaint sufficiently alleges that Defendants committed a violation of a clearly established constitutional right.

### 2.    *Excessive Force: Defendant Funderburk (Second Cause of Action)*

Mr. Colville's second cause of action alleges that Defendant Funderburk used excessive force in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. The law in the Eleventh Circuit provides:

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.' . . .  In this Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment because the use of force ' maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*. . . ."

*Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (internal citations omitted).  In addition, the Court of Appeals has articulated five factors, discussed below, relevant to ascertaining whether force was used "maliciously and sadistically for the very purpose of causing harm."  *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999).

Defendants argue that the Eleventh Circuit Court of Appeals, along with courts of appeals in other circuits, have deemed the use of a Taser appropriate in many circumstance.  *See Draper v. Moore*, 369 F.3d 1270, 1278 (11th Cir. 2004).  Defendants further contend that, given the ongoing threats and potential for violence of daily life within a jail, a fight between inmates – such as the one between Brown and Mr. Colville in this case – "presents a very serious danger to

everyone involved . . . ."  As such, Defendants argue that Funderburk was reasonable in using the Taser to quell the disturbance created by the altercation between Mr. Colville and Brown.

Defendants note that Mr. Colville "admits that the presence of Defendants Funderburk and Taylor in D-pod [Mr. Colville's cell-block] was necessitated by the altercation between him and Brown."  Defendants also point out that Mr. Colville admitted that he and Brown again became embroiled in a disturbance even after Funderburk and Taylor arrived.  Indeed, Mr. Colville alleges in his amended complaint:

> [b]y the time Funderburk and Taylor responded, the altercation had been resolved and [Colville] and Brown had been separated by other inmates.  While [Colville] has no recollection of these events, it appears that he did strike Brown after Funderburk and Taylor arrived and that the two became embroiled again until separated again by inmates.  Funderburk responded by discharging a Taser at [Colville].

The court concludes that the above language can be read to suggest that Funderburk used the Taser on Mr. Colville *either* during the renewed altercation *or* after Mr. Colville and Brown had been pulled apart by other inmates.  Taken in the light most favorable to Plaintiffs, therefore, the complaint alleges that Defendant Funderburk used the Taser against Mr. Colville after the altercation had concluded.  *See Bozeman v. Orum*, 422 F.3d 1265, 1271-72 (11th Cir. 2005) (finding that, from "continued use of force in a manner . . .[that] was severe enough to render [plaintiff], at the very least, unconscious *after* [he] had surrendered . . . one could draw a reasonable inference that the Officers' use of force was for the very purpose of causing harm: excessive force").

In addition, Plaintiffs' opposition to Defendants' motion to dismiss argues that (a) a factual dispute exists as to whether Funderburk ever gave any warning or oral command to Mr.

Colville to stop the altercation; (b) Defendants have exaggerated the degree of danger Funderburk and Taylor encountered when they arrived on the scene; and (c) nothing is known at this time that indicates that less violent means were not available to Funderburk to restrain Mr. Colville.  Plaintiffs conclude that "[i]t is just too soon to tell whether Funderburk's use of the Taser was malicious or for the purpose of restoring order."

The above arguments, as well as the severity of Mr. Colville's head injury, implicate each of the five factors that the Court of Appeals has instructed are relevant to determining whether force was excessive in violation of the Constitution:

> (1) "the extent of injury"; (2) "the need for application of force"; (3) "the relationship between that need and the amount of force used"; (4) "any efforts made to temper the severity of a forceful response"; and (5) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them."

*Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999) (citing *Whitley v. Albers*, 475 U.S. 312, 321 (1986) and *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Ultimately, although Plaintiffs have not specifically alleged that Funderburk's use of the Taser against Mr. Colville was malicious or sadistic, the allegations – taken in the light most favorable to plaintiffs, particularly at the motion to dismiss stage – could establish the inference that Funderburk's use of the Taser was unnecessary and extreme given that the altercation had concluded.  Defendants cite to several instances where courts have granted qualified immunity in similar, "even more serious" use-of-force cases.[5]  Notably, none of the cases Defendants cite

---

[5] *Butler v. Hutson*, 147 Fed. Appx. 62 (11th Cir. 2005) (granting summary judgment where defendant struck plaintiff with a walkie talkie); *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004) (granting summary judgment where officer used Taser gun during tense traffic stop); *Dye v. Lomen*, 40 Fed. Appx. 993 (7th Cir. 2002) (granting summary judgment where officers used stun gun against plaintiff during two cell entries); *Camp v. Brennan*, 54 Fed. Appx. 78 (3rd Cir. 2002) (granting summary judgment where officers used stun gun during cell

addressed the question of excessive force at the motion to dismiss stage.  All involved appeals of summary judgment proceedings, hearings, or bench trials.

Defendants argue in passing that Funderburk is entitled to qualified immunity because "[n]o clearly established law provided fair warning to Funderburk that his acts were unlawful" and that "the evidence clearly shows that [he] did not cross any bright line of clearly established constitutional law."  Defendants cannot dispute, however, that engaging in use of excessive force "maliciously and sadistically to cause harm" violates clearly established law, *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002), and that Funderburk would have been put on notice that such conduct is constitutionally impermissible.

Plaintiffs' amended complaint has made sufficient allegations that, if true, could lead to the conclusion that Funderburk engaged in malicious and sadistic use of force by using the Taser after the need to subdue Mr. Colville had subsided.  Funderburk may certainly again argue for qualified immunity at the summary judgment phase, once discovery has revealed additional facts about what exactly happened when he arrived at the scene of the altercation.  Likewise, at summary judgment, Plaintiffs will have to offer some evidence to support the inference that the use of the Taser was malicious and unnecessary.

Accordingly, Defendants' motion to dismiss Plaintiffs' Second Cause of Action, a claim

---

extraction); *Moore v. Novak*, 146 F.3d 531 (8th Cir. 1998) (affirming judicial finding of fact that use of stun gun and forcing plaintiff to the floor did not constitute excessive force); *Jasper v. Thalacker*, 999 F.2d 353 (8th Cir. 1993) (affirming decision of trial court that use of stun gun did not constitute excessive force); *Caldwell v. Moore*, 968 F.2d 595 (6th Cir. 1992) (granting summary judgment where officers used stun gun and straitjacket); *Michenfelder v. Sumner*, 860 F.2d 328 (9th Cir. 1988) (affirming magistrate's findings of fact that use of strip searches and Taser guns did not constitute excessive force); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990) (granting summary judgment where officers used force against inmate causing a disturbance); *Brown v. Smith*, 813 F.2d 1187 (11th Cir. 1987) (granting summary judgment where officers used baton to compel inmate's compliance with order).

for excessive force against Defendant Funderburk, is due to be DENIED.

### 3. *Deliberate Indifference: Defendants Funderburk, Parker, Taylor, Fabian, and Trish (Fifth Cause of Action)*

Plaintiffs' Fifth Cause of Action alleges that Defendants Funderburk, Parker, and Taylor[6] showed deliberate indifference to Mr. Colville's injury and his need for medical care and treatment.  Essentially, Plaintiffs have alleged that Defendants Funderburk, Taylor, and Parker knew that Mr. Colville had sustained a head injury after receiving the charge from the Taser, and that they failed to report the injury to the medical officials who came to examine him.  Defendants seek dismissal of that claim because Plaintiffs have acknowledged that certain Defendants did call medical professionals to examine Mr. Colville on the day he was injured, and as such that no constitutional violation has even been alleged.

In conducting the first step of a qualified immunity analysis, the court must first look at whether the officers' alleged conduct violates a constitutional right.  With respect to deliberate indifference that violates the Eighth Amendment prohibition against cruel and unusual punishment, the Eleventh Circuit Court of Appeals has held:

> [A] plaintiff must satisfy both an objective and a subjective inquiry. . . . First, a plaintiff must set forth evidence of an objectively serious medical need. . . .  Second, a plaintiff must prove that the prison official acted with an attitude of "deliberate indifference" to that serious medical need. . . .

*Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal citations omitted).  More specifically, to establish that an official acted with deliberate indifference, a plaintiff must show:

---

[6]  The Fifth Cause of Action also refers to Defendants Fabian and Trish, who are not party to this motion to dismiss.  Regardless, the deliberate indifference claim is due to be dismissed in its entirety, as discussed below, because someone at the jail called in medical professionals to evaluate Mr. Colville's injuries.

> the response made by public officials to that need was poor enough
> to constitute "an unnecessary and wanton infliction of pain," and
> not merely accidental inadequacy, "negligen[ce] in diagnosi[s] or
> treat[ment]," or even "[m]edical malpractice" actionable under
> state law. . . .   Ultimately, there are thus four requirements: an
> objectively serious need, an objectively insufficient response to
> that need, subjective awareness of facts signaling the need, and an
> actual inference of required action from those facts.

*Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (internal citations omitted).

Defendants do not dispute that Mr. Colville's injuries constituted an "objectively serious need." Accordingly, the questions are whether the alleged response to Mr. Colville's injuries was objectively insufficient and whether the Defendants had a subjective awareness that Mr. Colville may have sustained an injury necessitating treatment.

The court will first address the subjective awareness requirement. Undoubtedly, if Plaintiffs' allegations are accepted as true, both Defendants Funderburk and Taylor observed Mr. Colville slam into the stone wall and strike his head as a result of the charge from the Taser. Additionally, the amended complaint states that after the incident, "Funderburk and Taylor eventually had a trustee drag [Mr. Colville] to the 'detox' room. [Mr. Colville], as he was being dragged away, held his head and complained that he could not see and that he was dizzy. . . ." Therefore, as to Funderburk and Taylor, the pleadings imply that they had enough knowledge of the facts surrounding Mr. Colville to infer that he might have a serious medical need for treatment. As to Defendant Parker, the amended complaint specifically states that he "was advised of [Mr. Colville's] condition" on or about December 7, 2004. Again, accepting this allegation as true, Defendant Parker subjectively knew about Mr. Colville's head injury.

The next question is whether Plaintiffs have alleged that the Defendants' response to

Mr. Colville's injuries was objectively insufficient.  Plaintiffs do not dispute that medical professionals visited Mr. Colville on four occasions following the incident. They also note that "on information and belief," Sheriff Jacks had the doctor called on the day Mr. Colville was injured.  Plaintiffs, however, allege that the medical professionals were not told that Mr. Colville had experienced a blow to his head.

They provide no authority to support the idea that correctional officers have any duty beyond simply calling medical professionals in to examine an injured inmate.  The Eleventh Circuit Court of Appeals has stated:

> We have repeatedly found that "an official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate.". . .  Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable. . . .

*McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (internal citations omitted).

Here, Plaintiffs do not assert that the Defendants failed to obtain medical treatment for Mr. Colville, or that medical treatment was delayed in any way.  Indeed, they admit that medical professionals visited Mr. Colville on at least four occasions following the altercation, including on the day of the incident. The court is cognizant that the general purpose of qualified immunity is to protect government officials performing discretionary functions from suit in their individual capacities unless the official violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Defendants could not have reasonably expected that more was required of them than calling in

14

medical professionals, and allowing those medical professionals to treat the injured inmate on four separate occasions.

As Judge Myron Thompson recently wrote: "The law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong." *Thomas v. Campbell*, 2006 WL 1600525, *4 (M.D. Ala. June 8, 2006). Although not binding, Judge Thompson's opinion is persuasive, and suggests that jailers have a duty to intervene in medical care only where they actually know that doing so is necessary to prevent a constitutional violation.

Plaintiffs might have a stronger claim if they had clearly alleged that the Defendants actually knew that Mr. Colville had suffered a blow to the head following the use of the Taser against him, and that they then intentionally withheld that information from the medical officials for the purpose of harming Mr. Colville. At best, Plaintiffs have only alleged that the jailer Defendants knew of Mr. Colville's condition, and that the *medical professionals* did not observe and adequately treat that condition. They have failed to allege any specific connection between the jailers' knowledge and the medical professionals' failure to treat. Furthermore, Plaintiffs state that the jailers allowed medical professionals to treat Mr. Colville on four separate occasions. Plaintiffs, therefore, have not alleged that the Defendants committed any violation of constitutional rights, let alone a violation that was "clearly established."

Accordingly, Plaintiffs' Fifth Cause of Action, a claim for deliberate indifference, is hereby DISMISSED.

15

### 4.        *Custom, Policy, or Practice: Sheriff Jacks (First Cause of Action)*

The First Cause of Action in Plaintiffs' amended complaint alleges that "the use of excessive force unrelated to any penological purpose . . . occurs with such regularity [that it has become] . . . a custom, policy or practice there for [sic] which Jacks, as sheriff is personally responsible."  Defendants argue that Plaintiffs have failed to even state a cause of action against Sheriff Jacks, because they have not set forth facts showing that Sheriff Jacks knew or had notice of a need to correct ongoing use of excessive force.

The law of this circuit holds that, where – as here – a plaintiff has not alleged that a supervisor personally participated in the deprivation of constitutional rights, to establish liability the plaintiff must show a causal connection between the supervisor's actions or inactions and the plaintiff's injury.  Specifically,

> [a] causal connection may be established when: 1) a "history of widespread abuse" puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

*Valdes v. Crosby*, 450 F.3d 1231, 1237 (11th Cir. 2006).

Other than the caption, the descriptions of Defendants, and the causes of action, Plaintiffs mention Sheriff Jacks only on three occasions:

> •        "Following the incident, Funderburk notified Jacks who thus knew, or chose not to know, of Andrew's condition.  In fact, on information and belief, Jacks had DiValentin called the day Andrew was injured to have him checked."

> •        "[S]everal defendants, including . . . 'Wanda Sweat,' whom Jacks

16

claims not to know, asserted that Andrew was faking his
injuries . . . ."

- "Jacks claimed that he received the letter from DiValentin on
December 10.  [Mr. Colville] alleges that the letter was written and
sent after he arrived at Kilby and after individuals in Cleburne
County learned that Kilby personnel were investigating what
happened to him. . . . [T]he letter was part of an ongoing attempt to
cover up the source of his injuries, the failure to provide him
needed care while he was incarcerated in the jail and was written
only after Jacks and DiValentin learned of the investigation."

None of these factual allegations would support a claim that Sheriff Jacks was on notice

of a "history of widespread abuse" at the Cleburne County Jail, that he implemented any custom

or policy leading to the deliberate indifference to constitutional rights, or that he knowingly

directed subordinates to act unlawfully and/or knowingly failed to stop them from doing so.  At

best, Plaintiffs have alleged facts supporting the inference that Sheriff Jacks knew after the fact

about the excessive force used on this one occasion, and that he may have participated in a cover

up.  Such facts, which do not even allude to other instances of abuse of constitutional rights, fall

short of establishing a custom, policy, or practice sufficient to impose supervisor liability over

Sheriff Jacks.  Moreover, even if Plaintiffs have managed to state a claim for supervisor liability

using the above standard, they have failed to allege sufficient facts to support the heightened

pleading requirements for § 1983 claims involving qualified immunity.

Accordingly, Plaintiffs' First Cause of Action against Sheriff Jacks is due to be

DISMISSED.

### 5.   *Improper Training / Hiring and Retention: Sheriff Jacks (Eighth Cause of Action)*

Similarly, the above factual allegations fail to support Plaintiffs' Eighth Cause of Action,

against Sheriff Jacks for failure to institute adequate training.[7]  To establish such a claim,

Plaintiffs would need to show that Sheriff Jacks knew or should have known that Funderburk,

Taylor, or any other jail employee required additional or particular training because of improper

use of force.  The Eleventh Circuit Court of Appeals has held:

> A supervisory official is not liable under section 1983 for an injury
> resulting from his failure to train subordinates unless his "failure to
> train amounts to deliberate indifference to the rights of persons
> with whom the subordinates come into contact" and the failure has
> actually caused the injury of which the plaintiff complains.

*Belcher v. City of Foley*, 30 F.3d 1390, 1397 (11th Cir. 1994) (citing *Popham v. City of*

*Talladega*, 908 F.2d 1561, 1564-65 (11th Cir.1990)).  Plaintiffs have made no specific factual

allegations about Sheriff Jacks' training program for Funderburk and the other officers.  Nor

have they suggested that Funderburk and/or Taylor had previously used excessive force, such that

Sheriff Jacks might know that they needed additional training.  Again, particularly given the

heightened pleading standard for § 1983 claims, requiring "some factual specificity" to support

the allegations, Plaintiffs have not stated a claim against Sheriff Jacks for failure to institute

adequate, appropriate and proper training and/or failure to have appropriate safeguards in hiring

policies.

Accordingly, Plaintiffs' Eighth Cause of Action is due to be DISMISSED.

## C.      Conspiracy (Ninth Cause of Action)

Defendants initially moved to dismiss Plaintiffs' Ninth Cause of Action – a civil rights

conspiracy claim – on the basis that the Plaintiffs are not members of a protected class who can

---

[7]  Although the Eighth Cause of Action also states that Jacks "did not have appropriate safeguards in his hiring policies," Plaintiffs' opposition brief states that they "have not alleged any inadequacy of the hiring process." Accordingly, the court will not analyze whether Plaintiffs have stated a claim for inadequate safeguards in hiring.

sue under § 1985.  Plaintiffs then clarified that they bring their civil rights conspiracy claims

pursuant to § 1983, which does not require that Plaintiffs be members of a protected class to

bring a conspiracy claim.

Defendants next argued that "Plaintiffs' allegation that Defendants conspired among

themselves to violate Inmate Colville's rights does not supply the requisite specificity to

withstand dismissal."  Indeed, the law in the Eleventh Circuit provides that "[a] plaintiff claiming

a conspiracy under § 1983 must make particularized allegations that a conspiracy exists. . . .

Vague and conclusory allegations suggesting a § 1983 conspiracy are insufficient to withstand a

motion to dismiss. . . ."  *Hansel v. All Gone Towing Co.*, 132 Fed. Appx. 308, 309 (11th Cir.

2005) (unpublished opinion, citing *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359,

1370 (11th Cir. 1998) and *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984)).

The Court of Appeals has stated: "To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff

'must show that the parties "reached an understanding" to deny the plaintiff his or her rights

[and] prove an actionable wrong to support the conspiracy.'" *Bailey v. Bd. of Cty. Comm'rs of

Alachua Cty.*, 956 F.2d 1112, 1122 (11th Cir. 1992) (quoting *Bendiburg v. Dempsey*, 909 F.2d

463, 468 (11th Cir.1990)).

Plaintiffs' Ninth Cause of Action alleges:

> defendants conspired among themselves and with others, presently
> unknown to Plaintiffs, to violate [Mr. Colville's] right by agreeing
> to, acceding to and acting together to carry out the deprivations
> alleged in this complaint and to cover up, hide, obfuscate or
> otherwise prevent the discovery of the unconstitutional
> deprivations to which Mr. Colville was subjected.

The court finds that Plaintiffs have failed to allege *which* of the Defendants allegedly conspired

against Mr. Colville, rendering their pleading deficient to establish a cause of action.  Looking at the complaint as a whole, Plaintiffs have not identified any Defendants who "reached an understanding" to deny Mr. Colville his legal rights.  In only a couple of instances does the amended complaint even raise an inference of a meeting of the minds.

First, Plaintiffs allege "It is evident that . . . the medical records were deliberately falsified."  Such an allegation, albeit weakly, could imply that certain defendants reached an understanding to falsify records.  Plaintiffs have not, however, articulated which defendants might have participated in such a conspiracy, or even how the medical records might have been falsified.

Second, Plaintiffs state that Defendants Funderburk and Taylor essentially lied to Kilby Correctional Facility personnel about how he sustained his injuries.[8]  In the same paragraph, Plaintiffs' amended complaint suggests that Defendants Funderburk and Parker told Mr. Colville's fellow inmates to tell the ABI that they had beaten up Mr. Colville and dropped him in the shower.  Plaintiffs continue: "Several defendants alternately threatened and bribed inmates over the time [Mr. Colville] was at the jail in an apparent effort to keep them quiet about what happened to him."  Finally, Plaintiffs allege that a letter Sheriff Jacks received from Dr. DiValentin was received after individuals at the Cleburne County facility learned that Kilby personnel were investigating what happened to Mr. Colville.  Plaintiffs further allege that "the letter was part of an ongoing attempt to cover up" what had happened to Mr. Colville.

Plaintiffs' allegations give rise to an inference that several of the Defendants  might have

---

[8]  "[T]hey stated that [Mr. Colville] had been in an altercation with another inmate and had been hitting his head against the wall.  They did not say anything about the use of the Taser and the blow to his head [Mr. Colville] suffered as a result."

agreed to cover up a civil rights violations after the fact.  Even if such an understanding occurred, it does not constitute an agreement to violate Mr. Colville's civil rights, because by the time Defendants Funderburk and Taylor were talking to Kilby Correctional Facility, the alleged use of excessive force and deliberate indifference to his medical needs had already occurred.  Therefore, the alleged rights violations would have concluded by the time the Defendants engaged in the alleged coverup.  Although lying to Kilby Correctional Facility personnel certainly is problematic, such conduct does not trigger a civil rights conspiracy.  *See Mickens v. Tenth Judicial Circuit*, 181 Fed. Appx. 865, 876 (11th Cir. 2006) (unpublished opinion) ("Because the Mickens merely alleged . . . that the defendants generally covered and concealed other defendants' 'crimes and torts,' they failed to allege with specificity an agreement between the defendants to deprive the Mickens of their rights, and their § 1985(3) claim was due to be dismissed.").

Accordingly, Plaintiffs' Ninth Cause of Action as to the jailer Defendants is due to be DISMISSED.  Count 9, however, does not single out only the sheriff and deputies, referring generally to "defendants."  To the extent that it alleges a conspiracy claim against Dr. Valentin, Ms. Caldwell, and the Anniston Medical Clinic, none of whom have filed motions to dismiss, Count 9 shall proceed.

### D.    State Law Claims (Third, Fourth, and Tenth Causes of Action)

Defendants seek dismissal of the Third, Fourth, and Tenth Causes of Action in Plaintiffs' amended complaint on the basis of their entitlement to sovereign immunity.  Count 3 alleges a state law claim for assault and battery against Defendant Funderburk.  Count 4 alleges a state law claim for wantonness against Defendants Funderburk, Parker, Taylor, Fabian, Fordham, "CO

Lynn" and "CO Trish."  Plaintiffs identify all of these named Defendants as Cleburne County

deputy sheriffs and/or correctional officers.  Count 10, a state law claim for loss of consortium,

does not specifically name those Defendants from whom Mrs. Colville seeks recovery.

Alabama law clearly holds that sheriffs and their deputies[9] are state constitutional

officers, not state agents, and are thus entitled to absolute immunity.  As the Alabama Supreme

Court recently reiterated:

> As stated above, sheriffs and deputy sheriffs are executive officers
> of this State, pursuant to the Ala. Const.1901, Art. V, § 112. . . .
> Moreover, claims against sheriffs and deputy sheriffs are "barred
> by the absolute immunity of Article I, § 14, of the Alabama
> Constitution of 1901," . . .  when the sheriffs or the deputies were
> "acting within the line and scope of their employment."
>
> This State immunity afforded sheriffs and deputies is not affected
> by this Court's decision on State-agent immunity in *Ex parte
> Cranman*, 792 So.2d 392 (Ala.2000): "We do not deal here with
> the absolute immunity of witnesses, judges, prosecutors and
> legislators, nor do we overrule *Ex parte Purvis*, 689 So.2d 794
> (Ala.1996)." . . .  *See also Ex parte Haralson*, 853 So.2d at 930 n.
> 1 ("In *Cranman*, although we restated the rule governing
> State-agent immunity, we did not address the State immunity
> afforded to sheriffs and deputy sheriffs for actions taken while
> working in the line and scope of their employment, and we did not
> overrule *Ex parte Purvis*, 689 So.2d 794 (Ala.1996).").

*Ex parte Sumter County*, 2006 WL 2790036, *4 (Ala. Sept. 29, 2006) (some internal citations

omitted).

Plaintiff's Third, Fourth, and Tenth Causes of Action refer to conduct of the Defendants

within the scope of their employment as Sheriff and deputies.  Accordingly, under Alabama law,

---

[9] Apparently the extension of sovereign immunity to deputies includes jailers regardless of whether they hold the "deputy" title.  *See Lancaster v. Monroe Cty.*, 116 F.3d 1419, 1431 (11th Cir. 1997) ("[W]e agree with the district court that Alabama jailers are state officials entitled to Eleventh Amendment immunity when sued in their official capacities.").

all state law claims against the Defendants who have filed the instant motion to dismiss are due

to be DISMISSED.  Count 10, however, does not specify any defendants.  To the extent that it

alleges a loss of consortium claim against Dr. Valentin, Ms. Caldwell, and the Anniston Medical

Clinic, none of whom have not filed motions to dismiss, Count 10 shall proceed.

> ### E.     Injunctive Relief

In each count where Plaintiffs allege § 1983 violations against the Defendants who have

filed this motion to dismiss, they also have requested a "permanent injunction prohibiting [the

various Defendants and their co-employees] from retaliating against [Mr. Colville] for bringing

this action."  As Defendants note:

> To be entitled to permanent injunctive relief from a constitutional
> violation, a plaintiff must first establish the fact of the violation. . . .
> He must then demonstrate the presence of two elements: continuing
> irreparable injury if the injunction does not issue, and the lack of an
> adequate remedy at law. . . . If the plaintiff makes such a showing,
> the court may grant injunctive relief, but the relief must be no
> broader than necessary to remedy the constitutional violation. . . .

*Newman v. State of Ala.*, 682 F.2d 1312, 1319 (11th Cir. 1982).  Here, the Plaintiffs have not

alleged that anyone has retaliated against Mr. Colville for bringing the instant action.

Accordingly, they cannot succeed in obtaining injunctive relief against a purely theoretical

retaliation.  Additionally, an injunction such as the one Plaintiffs have requested would

essentially be an order for Defendants to obey the law, which is not permissible.  *Elend v.*

*Basham*, 2006 WL 3498349, *8 (11th Cir. Dec. 6, 2006) (citing *Burton v. City of Belle Glade*,

178 F.3d 1175, 1201 (11th Cir. 1999)).  Plaintiffs have not responded to Defendants' arguments

that the requests for injunctive relief should be dismissed.  All of Plaintiffs' requests for

injunctive relief are hereby DISMISSED.

### F.      Punitive Damages

Defendants initially argued that Plaintiffs' claims for punitive damages against Sheriff Jacks and the other jailers should be dismissed because punitive damages are barred by the Eleventh Amendment and by Alabama statute.  Plaintiffs, however, counter that they seek punitive damages against those Defendants in their *individual*, rather, than *official* capacities, which Defendants do not refute in their reply brief.  Rather, Defendants argue that Plaintiffs have not sufficiently alleged intentional, willful, or recklessly indifferent conduct.  Defendants' contention, however, belies the nature of Plaintiffs' complaint, which alleges that Defendants used excessive force and then deliberately ignored Plaintiff's injuries.  Even though the only claim that remains against any of the jailer Defendants is the excessive force claim against Defendant Funderburk, a jury could find that Funderburk's conduct was intentional, willful, or recklessly indifferent.  Therefore, Defendants' motion to dismiss Plaintiffs' claim for punitive damages against Defendant Funderburk, the only remaining jailer Defendent, is DENIED.

### V.      CONCLUSION

For the reasons discussed above, Plaintiffs' First, Third, Fourth, Eighth, and Ninth Causes of Action are dismissed in their entirety because the jailer Defendants are entitled to qualified or absolute immunity.  All claims against Defendant Tim Gossage are also dismissed, for failure to allege any facts supporting a cause of action against him.  Plaintiffs' Tenth Cause of Action should be dismissed as to all Defendants except the medical professionals, DiValentin, Caldwell, and the Anniston Medical Clinic, who have not moved to dismiss.

Plaintiff's complaint shall proceed only as to the Second Cause of Action against

Defendant Funderburk for excessive use of force, and the Sixth, Seventh, Ninth, and Tenth Causes of Action, against the medical professionals for deliberate indifference, civil rights conspiracy, medical malpractice, and loss of consortium.

A separate order will be filed contemporaneously with this memorandum opinion.

DATED this 7th day of March, 2007.

_Karon O. Bowdre_
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE