# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| **ANDREW COLVILLE and KAREN COLVILLE,** | ] |
| | ] |
| **Plaintiffs,** | ] |
| | ] |
| **v.** | ]      **CV-05-BE-1979** |
| | ] |
| **SHERIFF JOE JACKS, et al.,** | ] |
| | ] |
| **Defendants.** | ] |
| | ] |

## <u>MEMORANDUM OPINION</u>

This case is before the court on the Motion to Dismiss Plaintiffs' Second Amended Complaint (doc. 82) filed by Defendants Sheriff Joe Jacks and Correctional Officers Marty Funderburk, Jackie Taylor, and Jeff Parker (the "jailer Defendants").[1]  For the reasons stated below, the court finds that the motion is due to be GRANTED IN PART and DENIED IN PART.  Specifically, the court will GRANT Defendants' motion with respect to Plaintiffs' Third Cause of Action.  The court will DENY Defendants' motion as to the First Cause of Action against Sheriff Jacks for failure to train and as to the Second Cause of Action against Defendant Funderburk for excessive force.

---

[1] The Briefing Schedule (doc. 84) required all submissions to comply with Appendix II attached to the court's Uniform Initial Order and also available on the court's website.  Appendix II limits initial briefs to thirty pages and reply briefs to ten pages.  Defendants' briefs exceeded these limits, just as they did in connection with Defendants' motion to dismiss the first amended complaint.  Although the court did not reprimand Defendants previously, it will not continue to accept submissions that do not comply with its orders.  Accordingly, the court will STRIKE pages 11-32 of Defendants' reply brief.  Fortunately for Defendants, the vast majority of those twenty-two pages merely restate points already made and explain in detail specific cases the court reviewed for itself.  Defendants are advised to comply with all court orders in the future.  Although the Plaintiffs likewise did not seek the court's permission to file their two supplemental briefs (docs. 90 & 92), the court will nonetheless accept them because they raise issues identified by Supreme Court precedent published after Plaintiffs submitted their primary brief.

## I.  FACTUAL BACKGROUND[2]

At all times relevant to this lawsuit, Plaintiff Andrew Colville was an inmate in the Cleburne County jail in Heflin, Alabama.  He had been convicted of a crime and was awaiting transfer to the custody of the Alabama Department of Corrections.  At approximately noon on December 4, 2004, Colville became involved in an altercation with his roommate, Noah Jessie Brown, in the Cleburne County jail.  Defendants Funderburk and Taylor, correctional officers at the jail, responded to the altercation.  Plaintiffs' second amended complaint alleges that other inmates separated the men prior to the officers' arrival, but Colville and Brown subsequently resumed fighting until they were once again separated by other inmates.  Funderburk *then* employed a Taser against Colville without warning.  As a result of the Taser charge, Colville struck his head on a stone wall, collapsed, urinated on himself, and became disoriented.  Plaintiffs allege that Coville's impact against the wall "left a bloody mark."  Colville sustained an injury at the base of his skull, as evidenced by a large bruise that allegedly quickly formed.

Defendants Funderburk and Taylor then dragged Colville to a detox room where he was held until December 7, 2004.  As they took him away, Colville held his head and complained that he could not see and that he was dizzy.  Funderburk notified Defendant Jacks "[f]ollowing the incident," and Jacks caused medical personnel to be called at approximately 8:30 p.m.  Colville alleges that he continued to complain about his injuries for the next several days and that he was mentally and physically impaired as a result of the head injury.  Colville alleges that Funderburk visited him daily.  He asserts that the jailer Defendants did nothing to assist him or secure necessary treatment for him, even though they knew or had been told that he was severely

---

[2] For the purposes of Defendants' motion, the court assumes all Plaintiffs' factual allegations are true and makes all reasonable inferences in the light most favorable to Plaintiffs.

injured, and that they did not inform medical personnel of the facts leading to Colville's injuries.

Health care professionals employed by the Anniston Medical Clinic visited Colville the evening of December 4, 2004, but Plaintiffs allege that the medical reports from that visit did not indicate attention to his head injury. Plaintiffs note that Colville's medical records reflect that health care professionals visited him again on December 5, 7, and 8.[3] Plaintiffs contend that Colville's head injury and his general disorientation resulting from that injury "were obvious to virtually everyone" and "were evident." Additionally, Plaintiffs allege that, throughout the six days following the altercation, Colville was "in a stupor such that he does not have a clear recollection of what happened" and was "unable to adequately communicate with medical personnel concerning his condition or the history leading to it."

On December 10, 2004, at Sheriff Jacks' instructions, Funderburk and Taylor transferred Colville to the Kilby Correctional Facility, which is operated by the Alabama Department of Corrections. Colville was scheduled to serve the remainder of his sentence at Kilby Correctional Facility. When he arrived there, the guard at the back gate immediately noted his condition and called a nurse to attend to him. Colville was next transferred by stretcher to the Kilby hospital, and then to Baptist Medical Center South in Montgomery, Alabama, where doctors performed emergency surgery for a subdural hematoma and fractured skull. When he arrived at the hospital, Colville was in a coma and his body was covered in cuts and bruises.

Colville continues medical treatment since his release from prison. He alleges that he is disabled as a result of his injuries and cannot return to his previous employment. Colville's wife, Plaintiff Karen Colville, must care for him and, therefore, is unable to work regularly; she brings

---

[3] Plaintiffs appear to believe that the medical records were deliberately falsified, but they do not specifically assert that the records were falsified in terms of the number of visits the doctors made.

a claim for loss of consortium.

## II.  PLAINTIFFS' CAUSES OF ACTION

Plaintiffs sued Sheriff Joe Jacks and several jailers at the Cleburne County jail (Marty Funderburk, Jackie Taylor, and Jeff Parker) in their individual capacities, as well as the Anniston Medical Clinic and two of its employees (Louis Luciano DiValentin and Pam Caldwell) (the "medical Defendants").  The second amended complaint contains the following causes of action:

(1)     § 1983 claim against Sheriff Jacks for failure to institute appropriate and necessary controls on Taser use and failure to properly train correctional officers in Taser use;

(2)     § 1983 claim against Officer Funderburk for excessive force;

(3)     § 1983 claim against Officers Funderburk, Taylor, and Parker for deliberate indifference;

(4)     Alabama Medical Liability Act claim against Dr. DiValentin, Pam Caldwell, and the Anniston Medical Clinic;

(5)     § 1983 claim against Dr. DiValentin, Pam Caldwell, and the Anniston Medical Clinic for deliberate indifference; and

(6)     Mrs. Colville's Loss of Consortium claim.[4]

Defendants Jacks, Funderburk, Taylor, and Parker filed the instant motion to dismiss. The medical Defendants did not file a motion.  Therefore, the court does not need to address whether counts 4, 5, and 6 are due to be dismissed.

## III.  STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint.

---

[4] Although the Sixth Cause of Action does not specifically identify any Defendants, the court previously dismissed this claim as to the jailer Defendants.  *See* Mem. Op. 22.  In response to the jailer Defendants' renewed motion to dismiss this claim, Plaintiffs acknowledged that the Sixth Cause of Action was only "directed towards the medical defendants" and apologized for any ambiguity.  Accordingly, the court need not address this claim again and will hold Plaintiffs to their stated limitation of this claim.

Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *see also* Fed. R. Civ. P. 8(a).  A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (quoting *Conley*, 355 U.S. at 47).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 127 S. Ct. at 1969.  "[S]tating such a claim requires a complaint with enough factual matter (taken as true) to suggest" the required elements.  *Id.* at 1965.  As discussed below, however, in the Eleventh Circuit, these requirements increase where a plaintiff asserts a claim under 42 U.S.C. § 1983 and the defendant is entitled to assert qualified immunity.

In evaluating a motion to dismiss, the court assumes that all factual allegations set forth in the complaint are true, *United States v. Gaubert*, 499 U.S. 315, 327 (1991), and construes all factual allegations in the light most favorable to the plaintiff.  *Brower v. County of Inyo*, 489 U.S. 593, 598 (1989).  To succeed on a motion to dismiss under Rule 12(b)(6), therefore, a defendant must demonstrate that the plaintiff has failed to give sufficient notice of a proper claim and the grounds upon which that claim rests.

## IV.  DISCUSSION

### A.    Qualified Immunity and the Eleventh Circuit's Heightened Pleading Standard

Qualified immunity protects a government official performing discretionary functions from suit in his individual capacity unless the official violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Hope v. Pelzer*, 536 U.S.

730, 739 (2002).  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, . . . protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law . . . ."  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal citation and quotations omitted).  This court recognizes that "[b]ecause qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible."  *Id.* (citing *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998)).

To receive qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."  *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).  Once a defendant shows that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate.  *Id.*  The Supreme Court articulated a two-part test to determine whether qualified immunity is appropriate.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The court first asks "'this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? . . . [I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.'"  *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (quoting *Saucier*, 533 U.S. at 201).  Thus, a district court should "grant the defense of qualified immunity at the motion to dismiss stage if the complaint fails to allege the violation of a clearly established constitutional right."  *Id.* at 1233.

To effectuate the purpose and underlying principles of qualified immunity, the Eleventh Circuit Court of Appeals has adopted a heightened pleading standard:

> [W]hile Fed. R. Civ. P. 8 allows a plaintiff considerable leeway in
> framing its complaint, this circuit . . . has tightened the application
> of Rule 8 with respect to § 1983 claims, requiring that a § 1983
> plaintiff allege with some specificity the facts which make out its
> claim. . . .  Some factual detail is necessary to the adjudication of §
> 1983 claims.  This is particularly true in cases involving qualified
> immunity, where we must determine whether a Defendant's actions
> violated a clearly established right.

*GJR Invs.*, 132 F.3d at 1367.

Plaintiffs, however, argue that the Supreme Court's recent decision in *Erickson v. Pardus*, 127 S. Ct. 2197 (2007), calls into question the validity of the Eleventh Circuit's heightened pleading standard in § 1983 cases involving qualified immunity. Plaintiffs contend that *Erickson* "reinforces the Court's prior holding in *Leatherman v. Tarrant County NICU*, 507 U.S. 163 . . . (1993) and, at a minimum, imposes significant limits on the application of this circuit's heightened pleading requirements as a basis for dismissal of § 1983 claims."  (Pls.' Supp. Br. 1-2) (doc. 92).

This court need not review in detail the Supreme Court's and Eleventh Circuit's jurisprudence in this area.  Although other circuits may have relaxed or abolished the heightened pleading requirement based on a number of Supreme Court decisions, the Eleventh Circuit has retained it.  *See GJR Invs.*, 132 F.3d at 1368 ("Although the Supreme Court has held that courts may not impose a heightened pleading requirement in § 1983 cases <u>involving municipalities</u>, . . . the Court specifically declined to extend its holding to cases <u>involving individual government officials</u> . . . and we likewise decline to do so here.") (emphasis added).  *Erickson* did not explicitly require complete abandonment of the Eleventh Circuit's standard; the Court held only that the Tenth Circuit and the District Court of Colorado had "departed in so stark a manner from . . . the Federal Rules of Civil Procedure" based on the <u>facts alleged in that particular complaint</u>

as to warrant reversal – not that requiring <u>any</u> facts is prohibited.  In fact, such a holding would directly conflict with *Twombly*.  Moreover, the Eleventh Circuit Court of Appeals has not specifically addressed the effect of *Erickson* on its standard.  It has, however, applied the heightened standard since *Erickson*.  *See, e.g.*, *Lawson v. Curry*, 2007 WL 2287820 (11th Cir. Aug. 10, 2007).  Thus, until either the Supreme Court expressly mandates abolishment of the heightened standard in <u>any</u> § 1983 circumstance, or the Court of Appeals expressly abandons this Circuit's limited heightened pleading requirement, this court will not do so.

Even if *Erickson* leads to the ultimate demise of the heightened pleading requirement in the Eleventh Circuit, the court may require more specific factual allegations by other means.  Those circuits that have abandoned the heightened pleading standard nonetheless recognize the policy goal of deciding qualified immunity issues as early in the litigation as possible.  Thus, courts may order plaintiffs whose complaints are inadequate to file a reply under Fed. R. Civ. P. 7(a) tailored to the defendant's qualified immunity defense.  *See Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995); *see also Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001) ("Although there is no heightened pleading standard in qualified immunity cases, a district court has the discretion to ask a plaintiff to 'put forward specific, non-conclusory factual allegations that establish improper motive.'" (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998))).

The current amendment at issue is not the Plaintiffs' first attempt at adequately pleading this case.  In fact, the second amended complaint currently before the court is a result of the court's dismissal of Plaintiffs' first amended complaint.  Plaintiffs, therefore, have not been blind-sided by the requirement to provide greater factual specificity in support of their claims; this effort is their third opportunity.  If the heightened pleading requirement did not exist, and had this court ordered a detailed reply rather than dismissing Plaintiffs' first amended complaint,

Plaintiffs would be in the same position they are now: unable to adequately allege specific facts to support some of their claims against the jailer Defendants.  Moreover, after *Twombly*, Plaintiffs must allege at least <u>some</u> factual support for their allegations.  As discussed below, they have failed to do so regarding the jailer Defendants' deliberate indifference.  On the other hand, Plaintiffs have alleged just enough to warrant limited discovery as to their other claims.

>    **B.     Sheriff Jacks' Improper Training (First Cause of Action)**

Plaintiffs' first cause of action resurrects, in combination, the first and eighth causes of action from their first amended complaint.  They allege that Sheriff Jacks failed to institute adequate controls and training concerning the use of Tasers.

The Eleventh Circuit Court of Appeals has held that

>    [a] supervisory official is not liable under section 1983 for an injury resulting from his failure to train subordinates <u>unless</u> his "failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact" <u>and</u> the failure has actually caused the injury of which the plaintiff complains.

*Belcher v. City of Foley*, 30 F.3d 1390, 1397 (11th Cir. 1994) (citing *Popham v. City of Talladega*, 908 F.2d 1561, 1564-65 (11th Cir.1990)) (emphasis added).  Where a plaintiff has not alleged that a supervisor personally participated in the deprivation of constitutional rights,[5] to establish liability the plaintiff must show a causal connection between the supervisor's actions or inactions and the plaintiff's injury.  Specifically,

>    [a] causal connection may be established when: 1) a "history of widespread abuse" puts the responsible supervisor on notice of the

---

[5] In their <u>brief</u>, Plaintiffs state in passing that Sheriff Jacks was personally involved in "the constitutional deprivation" by delaying medical treatment during Colville's transfer, and they include some relevant factual allegations in the second amended complaint's "Facts" section.  Plaintiffs do <u>not</u>, however, include Sheriff Jacks in the Third Cause of Action for deliberate indifference, but instead rely only upon supervisory liability for alleged training failures as to Jacks.

> need to correct the alleged deprivation, and he or she fails to do so;
> [or] 2) a supervisor's custom or policy results in deliberate
> indifference to constitutional rights; or 3) facts support an
> inference that the supervisor directed subordinates to act
> unlawfully or knew that subordinates would act unlawfully and
> failed to stop them from doing so.

*Valdes v. Crosby*, 450 F.3d 1231, 1237 (11th Cir. 2006) (emphasis added).

Failure to train may amount to deliberate indifference where "the failure to train is likely to result in the violation of a constitutional right." *Belcher*, 30 F.3d at 1397-98. The Supreme Court, however, has given only one example where inadequate training is "so obvious" absent a pattern of prior abuse: "the obvious need to train police officers on the constitutional limitations on the use of deadly force, when the city provides the officers with firearms and knows the officers will be required to arrest fleeing felons." *Gold v. City of Miami*, 151 F.3d 1346, 1352 (11th Cir. 1998) (citing *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)).

Plaintiffs argue that the following alleged deficiencies meet these requirements: (1) the non-existence of "a clear policy requiring a warning before use of the Taser or a policy of seeking immediate medical assistance following its use," and (2) Sheriff Jacks' "policy of permitting the use of the Taser under such circumstances [*i.e.*, where the subject might fall and be injured], without regard to training officers of the particular dangers and without carefully circumscribing the areas in the jail where it could be used." In their brief in opposition to the motion to dismiss, Plaintiffs argue that Sheriff Jacks "directed subordinates to act unlawfully" and/or "his policies led to the constitutional violation complained of." (Pl.'s Br. 24). In particular, they argue that "Jacks' failure to train officers in the proper use of the Taser constitutes a policy decision for which he is responsible." (*Id.* at 25).

-10-

Plaintiffs have identified no case indicating that the U.S. Constitution requires a verbal warning before a correctional officer uses a Taser.  Likewise, Plaintiffs have identified no constitutional requirement that correctional officers refrain from using Tasers in certain areas of jails.  This court will not hold that these circumstances can result in constitutional violations; rather, correctional officers must be given great discretion in their use of Tasers to maintain order in jails.  In addition, any alleged failure to train jailers to obtain medical treatment after using Tasers is irrelevant to this case; the second amended complaint includes no allegations that the correctional officers delayed Colville's medical treatment and, thus, Plaintiffs cannot show that failure to train caused any delay in medical treatment.  Consequently, Plaintiffs' theories that the training was inadequate because it did not prohibit the use of Tasers where inmates could hit their heads, did not prescribe immediate medical treatment, and did not require verbal warnings are all unavailing.

On the other hand, the use of Tasers is a severe and painful mechanism of inmate control.  Just as the Supreme Court in *Gold* could perceive an obvious need to train officers in the use of firearms to avoid inappropriate use of deadly force, this court concludes that some training is obviously needed to avoid the use of excessive force where correctional officers are armed with Tasers with knowledge that they will be used on inmates.  To establish liability against Sheriff Jacks, Plaintiffs must show that his failure to train was deliberately indifferent to, and likely to result in, excessive force.  Plaintiff must also show causation.  Plaintiffs' failure-to-train claim cannot survive if Funderburk did not use excessive force.  At this stage, the Plaintiffs have not been allowed discovery regarding Defendants' training or Funderburk's use of allegedly excessive force.  Accordingly, the court will deny the jailer Defendants' motion at this time and allow limited discovery regarding training and Funderburk's use of force, as discussed below.

-11-

**C.    Funderburk's Excessive Force (Second Cause of Action)**

Plaintiffs claim that Funderburk violated the Eighth Amendment prohibition against cruel and unusual punishment by using excessive and unnecessary force against Colville.  In their second amended complaint, Plaintiffs have not altered the first amended complaint's relevant factual allegations supporting that Defendant Funderburk punished Colville with excessive force, which this court previously found sufficient to survive a motion to dismiss.  Defendants' renewed arguments for dismissal of this claim do not alter the court's conclusion that Plaintiffs have "made sufficient allegations that, if true, could lead to the conclusion that Funderburk engaged in malicious and sadistic use of force by using the Taser after the need to subdue Mr. Colville had subsided."  Mem. Op. 11.  Accordingly, for the reasons stated in the prior memorandum opinion in this case, *see* Mem. Op. 8-12, the court will deny Defendants' motion to dismiss Plaintiffs' Second Cause of Action, a claim for excessive force against Defendant Funderburk.  As stated in the earlier opinion, however, Defendant Funderburk may certainly move for summary judgment after discovery has revealed additional facts concerning the events in question; likewise, Plaintiffs must offer some evidence at the summary judgment stage to support the inference that use of the Taser was malicious and unnecessary.  Again, the court would like to expedite limited discovery on this issue and the training provided by Sheriff Jacks.

**D.    Deliberate Indifference (Third Cause of Action)**

Plaintiffs' third cause of action alleges that "Funderburk, Taylor – and later, Parker –" acted with deliberate indifference in violation of the Eighth Amendment by failing to seek immediate medical attention after the incident at issue and by failing to advise medical professionals of the circumstances leading to Colville's injuries.  In its previous opinion, this court stated that "Plaintiffs <u>might</u> have a <u>stronger</u> claim if they had clearly alleged that the

Defendants actually knew that Mr. Colville had suffered a blow to the head following the use of the Taser against him, and that they then intentionally withheld that information from the medical officials for the purpose of harming Mr. Colville." Mem. Op. 15 (emphasis added). In their second amended complaint, Plaintiffs have stated both of these allegations, yet they do not allege any facts to support their conclusory statements. They cannot create "facts" by placing the words "Plaintiff alleges" in front of their legal conclusions, such as "[h]e alleges that they [*i.e.*, the jailer Defendants] deliberately and intentionally chose not to secure that [medical] attention so that the costs of providing it be borne by the State of Alabama rather than the jail and that they intentionally jeopardized plaintiff in order to save Cleburne County money, thus causing plaintiff further damage." (2d Amd. Compl. ¶ 23).

The only relevant fact – as opposed to legal conclusion – that Plaintiffs add to the second amended complaint in response to the court's previous dismissal of this claim is that the Defendants failed to obtain medical treatment for Colville for more than eight hours after the injury. As the court noted in its previous memorandum opinion, a delay in medical treatment may be actionable. In fact, the Eleventh Circuit Court of Appeals has been clear:

> We have repeatedly found that "an official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." . . . Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable . . . .

*McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (internal citations omitted).

Plaintiffs allege that Defendants knew such a delay would cause Colville harm and that the delay did in fact cause further physical damage. (*See* 2d Am. Compl. ¶ 15). The second

-13-

amended complaint does not allege that Defendants Funderburk, Taylor, or Parker <u>delayed</u> medical treatment in any way.  Rather, Plaintiffs state that, "[f]ollowing the incident, Funderburk notified Jacks who thus knew . . . of plaintiff's condition.  In fact, on information and belief, <u>Jacks</u> had DiValentin called the day plaintiff was injured to have him checked.  However, the incident occurred at approximately noon on that day and DiValentin was not called until approximately 8:30 p.m., a delay of some eight hours."  (2d Am. Compl. ¶ 13) (emphasis added). Plaintiffs fail to allege any facts indicating that Funderburk, Taylor, or Parker were responsible for the eight-hour delay in medical treatment.  In fact, the second amended complaint does not allege that Parker was even aware of Colville's need for medical treatment prior to December 7 -- after three visits by medical professionals.  (*See* 2d Am. Compl. ¶ 14).  The facts alleged in the second amended complaint instead indicate that Funderburk informed Jacks "[f]ollowing the incident," and, at Jacks' direction, medical assistance was provided eight hours after the incident and three additional times over the subsequent four days.  The Third Cause of Action for deliberate indifference, however, does not name Jacks as a defendant.

In addition to the alleged delay, Plaintiffs also again focus on the jailer Defendants' failure to advise medical personnel of the circumstances leading to Colville's injuries.  To overcome Defendants' asserted qualified immunity, Plaintiffs must allege violation of a  "clearly established statutory or constitutional right[] of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  "For the law to be 'clearly established,'" the Eleventh Circuit Court of Appeals has stated, "case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law."  *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000).  Thus, "unless a controlling and materially

-14-

similar case declares the official's conduct unconstitutional, a defendant is usually entitled to qualified immunity." *Id.* In fact, this court previously granted Defendants' motion to dismiss this claim because Plaintiffs "provide[d] no authority to support the idea that correctional officers have any duty beyond simply calling medical professionals in to examine an injured inmate." Mem. Op. 14.

If the court accepts as true all Plaintiffs' factual allegations and draws all reasonable inferences in favor of Plaintiffs, it concludes that, <u>morally</u>, the jailer Defendants likely should have informed medical personnel of the cause of Colville's injuries. All transgressions of compassion and morality, however, do not violate the law. Plaintiffs have again failed to cite any authority clearly establishing that Defendants had a <u>legal duty</u> to inform medical personnel of these facts. Without a materially factually similar precedent, Plaintiffs may show broader principles that establish "with obvious clarity" that the jailer Defendants' conduct in this case was prohibited. *Powell v. Barrett*, 496 F.3d 1288, 1316 (11th Cir. 2006). Plaintiffs have likewise failed to do that. The foundation of Plaintiffs' claim is instead set forth in the facts section of their second amended complaint: "Plaintiff therefore alleges that it was incumbent upon Funderburk, Taylor and Jacks[6] . . . to advise medical personnel of what had happened to aid them in their diagnosis . . . ." Simply alleging that they had a duty is insufficient to clearly establish one.

Rather, the clearly established law indicates that the jailer Defendants had no duty to intervene in Colville's medical care once they obtained treatment for him and that they could reasonably rely upon the medical professionals' treatment decisions. *See Williams v. Limestone*

---

[6] As noted in footnote 5 above, although the second amended complaint includes allegations against Jacks such as this one, the Third Cause of Action does not name Jacks as a defendant.

*County, Ala.*, 198 F. App'x 893, 897 (11th Cir. 2006) (holding that prison officials are "entitled to rely on medical judgments made by medical professionals responsible for prison care"); *Linden v. Washtenaw County*, 167 F. App'x 410, 427 (6th Cir. 2006) (noting that prison guard's failure "to ensure his coworkers had a greater awareness of Griffin's mental condition and that doing so may have averted his death does not establish deliberate indifference"). "The law does not impose upon correctional officials a duty to directly supervise health care personnel . . . where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong." *Thomas v. Campbell*, 2006 WL 1600525, at *4 (M.D. Ala. June 8, 2006).

Under this caselaw, jailers cannot reasonably expect that more is required of them than informing proper authorities of an inmate's condition, and allowing medical professionals to treat the inmate. Thus, once Officer Funderburk conveyed Colville's condition to Sheriff Jacks, who called medical professionals, Defendants Funderburk, Taylor, and Parker had a reasonable expectation that the medical professionals would provide any necessary medical treatment, particularly when the medical professionals returned on four separate occasions. *See Waldrop v. Evans*, 871 F.2d 1030, 1036 (11th Cir. 1989) (noting that prison officials have a duty "to inform competent authorities once the officials have knowledge of a prisoner's need for medical or psychiatric care"); *see also Ware v. Zeller*, 214 F. App'x 363, 366 (5th Cir. 2006) (holding that correctional officer did not exhibit deliberate indifference where he informed his picket officer of inmate's complaints, albeit slowly because he believed inmate was malingering, and picket officer contacted the infirmary).

Plaintiffs allege that Funderburk, Taylor, and Parker remained silent to effectuate an improper purpose – to delay costly medical treatment until Colville was transferred into the state system. Nary a fact in the second amended complaint supports this allegation. Rather, the

-16-

factual allegations are that Funderburk informed Jacks, who then called for medical assistance, albeit eight hours later, and medical assistance was provided to Colville on four occasions while in the county's custody.  These facts do not support the inference Plaintiffs would like to draw from them.  Perhaps with more meat to Plaintiffs' bare bones allegations, a trier of fact might infer some motivation on the part of Jacks or the medical personnel, but not as to Funderburk, Taylor, or Parker.  The cannot indulge in inferences without some underlying facts to suggest, or at least support, such inferences.

Once medical personnel assumed treatment of Colville, Funderburk, Taylor, and Parker cannot be held liable for not contacting medical personnel again and again.  *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (affirming summary judgment for prison guards on deliberate indifference claim where guards did not respond to medical complaints from an inmate who was already being treated by the prison doctor).  Therefore, the only potential liability in these circumstances would arise from an unreasonable delay in initially calling for medical assistance on December 4, 2004.  As discussed above, the second amended complaint does not allege any facts indicating that Funderburk, Taylor, or Parker was responsible for the eight-hour delay in this case.

Even if Defendants were aware of some duty to provide medical professionals with background information concerning the circumstances leading to Colville's injury, Colville fails to even allege that the jailer Defendants' silence caused the medical personnel to miss the bruise on Colville's head.  To the contrary, the second amended complaint describes the injury as "evident" (2d Am. Compl. ¶¶ 14, 20) and  "obvious" (*Id.* ¶ 19).  In fact, these paragraphs use such adjectives when describing the injury from untrained, non-medical individuals' perspectives – other inmates and a minister.  Plaintiffs allege that the medical notes and a letter written by Dr.

-17-

DiValentin even indicate "head trauma" and the possibility of a CT scan to "rule out subdural hematoma." Thus, the medical professionals seem to have been on the right track, and no facts indicate that the jailer Defendants were responsible for Colville not receiving timely medical treatment. Where the Plaintiffs already allege that the medical professionals knew of the head injury, the court cannot make an inference that the jailer Defendants' failure to inform the medical professionals of the head injury somehow caused Colville further damage.

Accepting Plaintiffs' allegations as true, the court must find that Colville's injury was "obvious" and "evident." At best, Plaintiffs have only alleged that the jailer Defendants knew of Colville's condition, and that the medical professionals did not observe and adequately treat that condition. They have failed to allege any specific connection between the jailers' silence and the medical professionals' failure to treat. Accordingly, the complaint fails to state a cause of action against the jailer Defedants for deliberate indifference even under the *Twombly* standard of pleading as opposed to the Eleventh Circuit's heightened standard. Even if Plaintiffs had done so, the jailer Defendants are entitled to qualified immunity because no clearly established law at the time of Defendants' actions required the jailer Defendants to intervene in Colville's medical care once medical professionals were summoned; the Third Cause of Action must be dismissed.

## V.  CONCLUSION

For the reasons stated above, the court concludes that Plaintiffs have failed to allege "any set of facts" supporting their claim of deliberate indifference against the jailer Defendants. Even if they had successfully pleaded that cause of action, the Funderburk, Taylor, and Parker are entitled to qualified immunity. Accordingly, the court will GRANT IN PART Defendants' motion and will DISMISS Plaintiffs' Third Cause of Action.

On the other hand, the court will DENY Defendants' motion as to the First and Second Causes of Action against Sheriff Jacks and Officer Funderburk for the reasons stated above.  The court will enter a separate order consistent with this memorandum opinion.

DATED this 18th day of March, 2008.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE